OCEAN SALVORS COMPANY, Plaintiff,

v.

CROSSWAY NAVIGATION AGENCY, INC., Chronos Shipping Company, Ltd, Dodona Shipping Corporation, and the S.S. ASPHALT MERCHANT, her engines, boilers, etc. Defendants.

No. 81 Civ. 2163–CSH.

United States District Court,
S. D. New York.

July 19, 1982.

Burlingham, Underwood & Lord, New York City, for plaintiff; Kenneth H. Volk, Laura V. Becker-Lewke, New York City, of counsel.

Freehill, Hogan & Mahar, New York City, for defendants; Philip V. Moyles, Peter S. Wiswell, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The parties to this suit on a maritime contract cross move for summary judgment. The essential facts are not in dispute. Defendants owned and operated the S/S ASPHALT MERCHANT. On October 24, 1980 the vessel became disabled off the New Jersey coast and required assistance. Plaintiff, as its name suggests, is in the ocean salvage business. Plaintiff and defendants entered into a contract for the use of plaintiff's salvage tug, the pertinent provisions reading as follows:

"... and the SECOND PARTY agrees to pay hire at the rate of SIXTEEN THOUSAND U.S. DOLLARS (U.S. $16,000.00) per calendar day or fraction thereof, hire to commence on the day the tug departs from its berth at New York, New York about 1800 local time, October 27, 1980 and to continue until the day she returns thereto..."

Plaintiff's tug commenced her salvage services at 1800 hours on October 27, 1980. The services were successfully completed at 1700 hours on October 31, 1980.

Plaintiff contends that it is entitled to compensation under the contract of $80,000. That is because the salvage services extended over five days: October 27, 28, 29, 30, 31. Plaintiff relies on the contract provision that hire was to be paid for the tug at the rate of $16,000 "per calendar day or fraction thereof..."

Relying upon the same provision, defendants say that plaintiff is entitled to $63,332.70. This derives from an hourly rate of $666.66 ($16,000 divided by 24 hours per day) multiplied by the 95 hours of service actually rendered. Having paid plaintiff $64,000, defendants counterclaim for $666.66.

The clear and unambiguous language of the contract supports plaintiff's claim. Defendants' position, in essence, is that a calendar day not fully devoted to salvage services should be charged on a *pro rata* basis, pursuant to which only those hours actually expended on salvage services are compensable. This interpretation, as defendants' calculation shows, has the practical effect of transforming compensation from a daily to an hourly basis.

It is perfectly possible, in maritime charterparties, to provide for the fractionalizing of larger periods of time in order to "fine tune" compensation. Cf. *Steamship Co. Gorm v. United States Shipping Board Emergency Fleet Corp.*, 285 F. 142 (2d Cir.

1922) ("That said charterers shall pay as hire ... per calendar month ... and pro rata for any fractional part of a month..."). The key phrase is "pro rata," which is defined in *Black's Law Dictionary* (4th ed. 1951) at 1364 as "proportionately; according to a certain rate, percentage, or proposition." But the present parties did not do that. Defendants are obligated to pay at a rate "of $16,000 per calendar day or fraction thereof." The plain meaning is that they must pay $16,000 if the tug was engaged on salvage services *either* during a full day, or for any "fraction thereof." Support for this construction appears in *I. Tanenbaum Son & Company, Inc. v. Oxford Dye Works*, 107 N.J.L. 386, 153 A. 501 (Sup. Ct.1931), and *Tanenbaum Co. v. Sixth Ave. Twenty-Third St. Corp.*, 268 App.Div. 213, 48 N.Y.S.2d 415 (1st Dept. 1944), aff'd, 294 N.Y. 835, 62 N.E.2d 390 (1945), which plaintiffs cite. Defendants point out correctly that these were liquidated damages cases, but I do not consider the distinction to be material in respect of the proper interpretation of the pertinent language.

■ Defendants complain that this construction works an unfair result because it gives plaintiff compensation "in excess of the amount earned." Brief at 6. But this is a bootstrap argument, assuming as its basic premise defendants' interpretation of the contract. Under the contract as written, plaintiff's tug "earned" hire at the rate of $16,000 per calendar day "or fraction thereof"; although it could have been so drafted, the contract did not limit "earnings," in respect of days on which the tug performed less than 24 hours of salvage service, to those particular hours when such services were rendered. That result, as noted, could have been achieved by use of that familiar apportioner's tool "pro rata."

Furthermore, there is nothing inherently unfair about the contract's compensatory scheme. Except in those unlikely circumstances where a salvage service begins on the stroke of midnight of one day, and is successfully completed at the stroke of midnight on another, at least during the first and last "calendar days" of the service the salvage tug will not be engaged on the service during the entire 24 hours. But that does not mean she can be gainfully employed by her owners in other pursuits. A salvage tug is not a taxicab, capable of dropping off a fare-paying passenger at, say, Grand Central Station, and then immediately picking up another. In these circumstances, the tug owner may reasonably request a full day's compensation even where the tug's services consumed only a fraction of a day. Defendants did not have to agree, but they did so; and the practical realities of the case are fatal to defendants' faint, alternative suggestion of a contract of adhesion. Counsel for defendants say that "such an argument raises material issues of fact." It does not. In the circumstances of this case, the doctrine of contracts of adhesion is inapplicable as a matter of law.

Plaintiff's motion is granted. Defendants' cross-motion is denied. The Clerk is directed to enter judgment in favor of plaintiff Ocean Salvors Company, and against the three corporate defendants jointly and severally, in the amount of $16,-000, with interest at the rate of 9 per cent per annum from November 13, 1980, the date of invoice, until paid.

It is So Ordered.